EDWARD J. SHANNAHAN, as Administrator of the Estate
of MORRIS C. SHANNAHAN, Deceased, Appellant, *v.*
EMPIRE ENGINEERING CORPORATION, Respondent.

**Labor Law — employment of minors — safeguarding of shaft-
ing and machinery — negligence — a tugboat is not a factory or
establishment within the meaning of the statute relating to
employment of minors and safeguarding of machinery — evi-
dence — competency of expert as to guarding of shafting on
tugboats.**

1. A tugboat is neither a factory nor a " mill, workshop or other
manufacturing or business establishment " within the meaning
of section 2 of the Labor Law, even when liberally construed for
the purpose of protecting workmen and minors.   The provision
of section 70 of the Labor Law requiring that no child between
the ages of fourteen and sixteen years shall be employed in a
factory unless an employment certificate is filed as therein pro-
vided, has no application where a boy between fifteen and sixteen
years of age was injured by being caught by unguarded set screws
on a tugboat on which he was employed, and the trial court prop-
erly excluded evidence offered to show that no such certificate had
been issued.

2. When a question of negligence at common law is involved,
general usage and practice is competent to show ordinary care, just
as one may show the purchase of a standard article from a repu-
table dealer.   The common usage of the business is a test of
negligence but not a conclusive or controlling test.

3. The plaintiff alleged that it was the duty of the defendant " to
provide proper and safe covering for the shaft and set screws con-
nected with its machinery, which covering is usual upon machinery
of this character."   He called a witness who testified that he had
repaired machinery on several tugboats like the one in question
and had observed that the shafts therein were protected.   After
this the defendant was permitted to show, under objection and
exception, by one witness that he had designed upwards of five
hundred boats like the one under consideration; by a government
inspector that he had inspected from one to four hundred such
boats and by others that they had seen many of the same kind, and
by all of these witnesses that none of the boats so observed by them
had any covering or guard over the collars or shafts.   *Held*, compe-

tent, not only to meet the issue tendered by the plaintiff and the testimony furnished by him in its support, but also to show the standard of construction according to general usage.

*Shannahan* v. *Empire Engineering Corp.*, 140 App. Div. 946, affirmed.

(Argued February 23, 1912; decided March 8, 1912.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 30, 1910, affirming a judgment in favor of defendant entered upon a verdict.

In November, 1907, the defendant, a domestic corporation, was engaged in carrying out a contract with the state of New York, which required that certain material should be dredged from the bed of the Hudson river near Fort Miller. As the material was excavated it was loaded into scows, which were towed by tugboats to the dumping place. The plaintiff, a lad over fifteen but under sixteen years of age, had been employed with the consent of his parents on one of the tugboats as a deckhand and fireman for six or seven months. This tugboat was of the ordinary type with an open deck above, the boilers in the forward part; then an open space, six or seven feet long and as wide as the boat, where the fireman shoveled coal under the boilers, and back of this space the engine, with a passageway on either side. Lower down and behind the engine was the hold of the boat, through which a shaft five inches in diameter extended with the top thereof about fourteen inches from the floor. The shaft consisted of two parts fastened together by a coupling, located seven inches behind the frame of the engine, and about a foot behind the coupling was a stationary thrust-bearing attached to a block through which the shaft passed. On top of the bearing was a cup where the bearing and shaft were oiled. On each side of the bearing were collars attached to the shaft and revolving with it, and at the end of each collar were two set screws used to keep the collar tight to the bearing. These screws projected from

one and a half to two and one-fourth inches from the collar and revolved with it. There was no covering or guard of any kind over any part of the shaft after it left the engine. Evidence was given tending to show that on the 30th of November, 1907, the plaintiff's intestate, while attending to his duties, slipped on the oily floor; his clothing was caught by the unguarded set screws, his body was wound around the rapidly revolving shaft, and he was fatally injured. Evidence was also given tending to show that the shaft could have been guarded in various ways, without much expense or serious inconvenience. The jury found a verdict in favor of the defendant, and the Appellate Division unanimously affirmed the judgment entered thereon.

*Erskine C. Rogers* and *John E. Sawyer* for appellant. The plaintiff's intestate when employed in the tugboat was an employee "working in or in connection with a business establishment," as defined by section 2 of article 1 of the Labor Law, and, being under the age of sixteen years, the court erred in excluding proof offered to show that no certificate had been issued pursuant to section 70 of the Labor Law, a violation of which is some evidence of negligence. (*People* v. *Tax Comrs.*, 23 N. Y. 242; *People* v. *New York,* 22 How. Pr. 143; *Rabe* v. *C. Ice Co.*, 113 Fed. Rep. 905; *Murphy* v. *Bennett*, 11 App. Div. 298; *Caddy* v. *Interborough R. T. Co.*, 195 N. Y. 415; *Madden* v. *Hughes*, 104 App. Div. 101; 185 N. Y. 466; *Chaffee* v. *Erie R. Co.,* 68 App. Div. 578; *Kircher* v. *Ironclad Mfg. Co.*, 134 App. Div. 144; *Marino* v. *Lehmaier*, 173 N. Y. 530; *Sitts* v. *W. Knitting Co.*, 94 App. Div. 38.) The court erred in allowing the defendant's witnesses to testify that in other particular boats the shafts were not guarded. (*Earl* v. *Crouch*, 61 Hun, 624; 131 N. Y. 613; *Wright* v. *Boller*, 42 Hun, 77; *Hatch* v. *Luckman*, 64 Misc. Rep. 508; *McMichaels* v. *Federal Printing Co.*, 139 App. Div. 225.)

*Edward M. Angell* for respondent. It was not error to exclude evidence that no employment certificate had been issued to plaintiff's intestate since the tugboat upon which he was employed was not a factory within the meaning of the Labor Law, so that no certificate was required though he was under the age of sixteen years. (*Waller* v. *Harris,* 20 Wend. 555; *Murphy* v. *Bennett,* 11 App. Div. 298; *Spencer* v. *Myers,* 150 N. Y. 269; *Fitzgerald* v. *Quann,* 109 N. Y. 441; *Matter of Denny,* 2 Hill, 220; *McCloskey* v. *Cromwell,* 11 N. Y. 593; *Fuchs* v. *Cohen,* 29 Abb. [N. C.] 56; *Matter of Reynolds,* 124 N. Y. 388, 397; *Donahue* v. *Keeshan,* 91 App. Div. 602.) The evidence offered by defendant as to the standard of construction in tugboats, and that in such standard boats shafts were not guarded, was properly admitted. (*Warden* v. *Tesla,* 93 App. Div. 520; *Hormun* v. *McNeil,* 80 App. Div. 637; *Gates* v. *Bowers,* 41 App. Div. 612; *Bennett* v. *Long Island R. R. Co.,* 163 N. Y. 1; *Harley* v. *Buffalo C. M. Co.,* 142 N. Y. 31; *Kern* v. *De Castro & D. S. R. Co.,* 125 N. Y. 50; *Burke* v. *Witherbee,* 98 N. Y. 562; *Devlin* v. *Smith,* 89 N. Y. 470; *Carlson* v. *Phœnix Bridge Co.,* 132 N. Y. 273; *McGrath* v. *Fibre Conduit Co.,* 122 App. Div. 424.)

VANN, J. Although the learned justices of the Appellate Division certified that a question of law was involved in this action which in their opinion ought to be reviewed by the Court of Appeals, they wrote no opinion and did not point out the question of law. As there was no exception taken to the charge, and the judgment of the trial court was unanimously affirmed, we are confined on this review to the exceptions relating to evidence.

The main point urged by the appellant is that the plaintiff's intestate was an employee "working in or in connection with a business establishment" as defined by the Labor Law, and that as he was under the age of sixteen the court erred in excluding proof offered to show

that no certificate had been issued pursuant to section seventy of that act.

Section seventy of the Labor Law (Cons. Laws, ch. 31) is as follows: " Employment of Minors. No child under the age of fourteen years shall be employed, permitted or suffered to work in or in connection with any factory in this state. No child between the ages of fourteen and sixteen years shall be so employed, permitted or suffered to work unless an employment certificate as provided in this article shall have been theretofore filed in the office of the employer at the place of employment of such child." The next section provides what such certificate shall contain, by whom it shall be issued and other details not now important. Section eighty-one requires that "shafting, set screws and machinery of every description shall be properly guarded " by the owner or person in charge of a factory.

The word "factory" is not specifically defined in the Labor Law, but it is provided by section two under the head of "definitions" that "the term 'factory,' when used in this chapter, shall be construed to include *also* any mill, workshop, or other manufacturing or business establishment where one or more persons are employed at labor."

The appellant claims that the tugboat in question was a "business establishment" within the meaning of the statute and the complaint was drawn and the action tried in part upon the theory that the failure to properly guard the shaft and set screws was evidence of negligence. While other grounds of negligence were alleged and to some extent supported by evidence, they are withdrawn from our consideration by the verdict of the jury and the unanimous affirmance thereof by the Appellate Division.

We think that a tugboat is neither a factory nor a "mill, workshop or other manufacturing or business establishment " within the meaning of the Labor Law even when liberally construed for the purpose of protect-

ing workmen and especially minors employed where machinery is used. A factory is a structure or plant where something is made or manufactured from raw or partly wrought materials into forms suitable for use. This is the primary definition which was extended by the statute so as to include any "mill, workshop or other manufacturing or business establishment where one or more persons are employed at labor." The term "business establishment" as thus used means one resembling a mill, workshop or other manufacturing establishment. It is confined to things of the same general character as those named. It does not mean all business establishments where one or more persons are employed at labor, but only those engaged to some extent at least in manufacturing of some kind. Obviously it does not include a hotel, grocery, store and many other business establishments where one or more persons are employed at labor. A towboat navigating a river cannot be held an "establishment" of any kind without trifling with the plain meaning of the word. The legislature has not provided that all shafting and set screws wherever used shall be properly guarded, but only such as are used in factories or establishments where business in the nature of manufacturing is carried on through the operation of machinery. The Labor Law should be read in the natural way so as to get at the exact meaning without forcing it in any direction in order to meet the needs of either side in a particular case.

The defendant had no factory and the decedent was not employed in or "in connection with any factory," even when that word is given its broadest meaning. The entire business of the defendant was to dredge material from the river, place it on barges, tow them to a dumping place and there dump the loads. Nothing was made or constructed or converted from raw or imperfect material into a finished article. There was no manufacturing process and no manufactured product. No busi-

ness was done on the boat and nothing was done either on or with the boat which in the least resembled manufacturing or which suggested a factory, "mill, workshop or other manufacturing or business establishment" of like character. Dredging is not manufacturing any more than digging a cellar. The transportation of excavated material is not manufacturing any more than the carriage of freight or passengers. No part of the defendant's plant, machinery or appliances was a factory or connected with a factory, and no part of its work involved manufacture in any sense. Its towboats were not under the jurisdiction of the commissioner of labor under the Labor Law, but under the jurisdiction of the superintendent of public works under the Navigation Law. We think the Labor Law has no application to this case and that the trial court properly excluded the evidence offered to show that no certificate had been issued under that statute.

The plaintiff alleged in his complaint that it was the duty of the defendant "to provide proper and safe covering for the shaft and set screws connected with its machinery, which covering is usual upon machinery of this character." He called a witness who testified that he had repaired machinery on several tugboats like the one in question and had observed that the shafts therein were guarded by being decked over, or protected by a spout or inverted trough. After this the defendant was permitted to show, under objection and exception, by one witness that he had designed upwards of five hundred boats like the one under consideration; by a government inspector that he had inspected from one to four hundred such boats and by others that they had seen many of the same kind; and by all of these witnesses that none of the boats so observed by them had any covering or guard over the collars or shafts.

We think this evidence was competent not only to meet the issue tendered by the plaintiff and the testimony fur-

nished by him in its support, but also to show the standard of construction according to general usage. Aside from the alleged violation of the Labor Law the plaintiff claimed that the defendant was guilty of negligence at common law. When such a question of negligence is involved general usage and practice is competent to show ordinary care, just as one may show the purchase of a standard article from a reputable dealer. The common usage of the business is a test of negligence but not a conclusive or controlling test. (*Bennett* v. *Long Island R. R. Co.*, 163 N. Y. 1, 4; *Burke* v. *Witherbee*, 98 N. Y. 562, 566; Thompson's Negligence, § 3770; 29 Cyc. 609.) While it is not always true that what everybody does anybody may do without the imputation of negligence, still it is competent to show the general habit of mankind in the same kind of business as tending to establish a standard by which ordinary care may be judged. We have said that "ordinarily what everybody does is all that anybody need do." (*Boyce* v. *Manh. Ry. Co.*, 118 N. Y. 314, 319.) Such evidence is received for what it is worth in view of all the circumstances of the particular case, and, under proper instruction from the court as to its inconclusive nature, the jury has a right to give it such consideration as they think it should receive in connection with all the other facts.

We find no error in the record, and the judgment appealed from should, therefore, be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, HISCOCK and COLLIN, JJ., concur.

Judgment affirmed.