THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of WILLIAM STROSAHL, Respondent, *v.* CROSS & BROWN COMPANY, Appellant.

First Department, June 24, 1931.

*Peter Willis Quinn* of counsel [*Henry Willis Smith* with him on the brief; *Showers, Jason & Quinn,* attorneys], for the appellant.

*Milton I. Hauser* of counsel [*Rose Schnepf* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the respondent.

O'MALLEY, J.   The corporate defendant, Cross & Brown Company, is the agent of a six-story non-fireproof building located at 675 Fifth avenue, city of New York.   The information charges that as such agent it violated section 270, article 11 of the Labor Law of the State by permitting said premises to be used for factory purposes.

The statute in question, in so far as material, provides that in all buildings more than one story in height erected after October 1, 1913, no factory shall be conducted unless in conformity with specified requirements, among which are:

" 1. Fireproof construction. All buildings more than four stories in height shall be fireproof; " and

" 3. Required exits.   *   *   *   From every floor area there shall be not less than two exits remote from each other,   *   *   *."

Concededly, the building was not fireproof, had but one exit and failed to comply, therefore, with the requirements of the statute.

The defense was predicated upon two grounds: (1) That the building was not a factory; and (2) even though it may be so regarded, it was exempted from the provisions of section 270 (*supra*) by virtue of the provisions of subdivision 9, section 2, of the same law.   The questions presented by these contentions will be considered in the order stated.

The term " factory " is defined in subdivision 9, section 2 (*supra*), as amended by chapter 489 of the Laws of 1921.   It reads in part:

" 9. ' Factory ' includes a mill, workshop or other manufacturing establishment and all buildings, sheds, structures or other places used for or in connection therewith, where one or more persons are

employed at manufacturing, including making, altering, repairing, finishing, bottling, canning, cleaning or laundering any article or thing, in whole or in part * * *."

It is the claim of the People that the defendant permitted " manufacturing " within the purview of the statute, and that *ipso facto* the building became a factory by defendant's permission.

The business conducted which has been held by the trial court to constitute manufacturing is that of photography. This was conducted by a single concern which occupied the sixth and part of the fifth floors. All other floors, including the basement, were occupied by tenants who concededly were not engaged in any form of manufacturing.

An inspector of the bureau of fire prevention of the fire department testified that he found the sixth floor occupied by a photographer " developing, printing and retouching," and that of the eight persons employed by the photographer, five were engaged in what the witness termed manufacturing. The nature of the work being done by these five persons was described by the witness as follows:

" Q. Will you please specify what those five persons were doing on the day you were there? A. One person on the sixth story was developing and printing pictures, that is developing. Q. What did you see him do? A. I saw him take the negatives and immerse them in a solution and expose the negatives, after the treatment, to light and make prints from them. Q. There were five persons doing that? A. No, there were two persons: one on the sixth floor and one on the fifth, doing that, and I saw two persons retouching, finishing photographs: that is putting the finishing touches to them. The Court: With what? A. With a pencil. And this print was over a light which made it sort of transparent, to bring out the features more distinctly, I imagine, and to finish out lines that were not thoroughly finished in the printing process. Then there was one person finishing prints. By that I mean they cut the edges off them and mount them."

On cross-examination, when requested to further describe the retouching process, he stated: " There were two persons sitting on an elevated platform, and they had a table that had an electric light underneath, with a glass top. They would place the photograph on the glass top, and the light would act as a means of making the photograph transparent, and they were retouching. By that I mean they would bring out an eyelash, or bring out some portion of the features that would not be properly printed."

He further testified that he saw a boy at a table wrapping up photographs in packages.

The description of the work being done as given by the defendant's witnesses, employees in the photographer's studio, differed little, if any, from that given by the People's witnesses, except that it was admitted by them that in some instances the photographs were given a touch of color in the finishing process. The defendant's evidence also showed that the process employed by this photographer in taking, making and developing a picture, was the same as that used by all other photographers in the city of New York.

It is urged by the People that in the work done as thus outlined, there was manufacturing, for it included "making," "altering," and "finishing" of an "article or thing, in whole or in part," within the provisions of the statute which defines the term "factory."

With this contention we are unable to agree. We are of opinion that ordinary photography, as here described, may not be said to be manufacturing. We may take judicial notice that it is merely the production, by the chemical action of light, of objects upon a film imposed upon glass, metal, celluloid or other suitable material, and the reproduction of such objects by further light action by means of the negative placed between the light and paper or other substance, also sensitized to the chemical action of light. Such process is in no way the making or manufacturing "from raw or partly wrought materials into forms suitable for use," the broad test laid down under the former statute. (*Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543, 548.) This test or definition is reasonable and fairly applies even under the more specific provisions of subdivision 9, section 2, Labor Law, as amended in 1921.

Photography as carried on by the defendant is no more manufacturing than would be the transformation of a plain piece of canvas by an artist into a finished portrait in oil; yet no one could seriously contend that such would be manufacturing. It is no more manufacturing than was the grinding and chopping up of raw meat in a butcher shop by machine. (*O'Connor* v. *Webber*, 163 App. Div. 175; 219 N. Y. 439.)

We are further of opinion that the statute, moreover, does not apply where less than six persons are employed. The language of the last sentence of the section, subdivision 9, section 2 (*supra*), is specific: "The provisions of this chapter affecting structural changes and alterations, shall not apply to factories or to any buildings, sheds or other places used for or in connection therewith where less than six persons are employed at manufacturing except as otherwise prescribed by the rules."

This is the interpretation placed upon the statute by the Com-

missioner of Labor himself. (Resolution of Industrial Board, adopted May 8, 1930.)

It follows, therefore, that the judgment appealed from should be reversed and the information dismissed.

FINCH, P. J., MERRELL, SHERMAN and TOWNLEY, JJ., concur.

Judgment reversed and the information dismissed.