BENJAMIN LEVY, as Administrator, etc., of DANIEL J. LEVY, Deceased, Plaintiff, *v.* CASCADES OPERATING CORPORATION, Defendant.

Supreme Court, Trial Term, Kings County, April 2, 1941.

*Max J. Le Boyer* [*John M. Wilson* of counsel], for the plaintiff.

*John J. Kerwin* [*James J. McLoughlin* of counsel], for the defendant.

Smith, J. This is an action to recover damages for the death of a boy, Daniel Levy, as a result of striking his head upon the bottom of a swimming pool when he slid down a chute or slide maintained in the pool. The boy was using the slide and pool as a regular patron.

The jury brought in a verdict of $7,500 for the plaintiff. Defendant has moved to set aside the verdict on the usual grounds. Before the submission of the case to the jury defendant had also moved to dismiss the complaint on the grounds (1) that the plaintiff failed to establish negligence on the part of the defendant, and (2) that the deceased was guilty of contributory negligence and assumed the risk of the happening of the accident. Decision on all motions was reserved; and in view of the nature of the motions the facts, as adduced at the trial, will first be reviewed briefly.

Defendant owns, maintains and operates both the pool and slide. A photograph and diagram showing both are in evidence. The pool is one hundred and fifty feet long running east and west and seventy-five feet wide running north and south. The slide is twenty-eight feet long and almost seventeen feet high. It is adjacent to and approximately at the middle of the north side of the pool. Access to the slide is had by a stairway on the north side of the deck of the pool. The stairway leads to a platform to which the slide is connected. The stairway, the platform and the slide are built and operated as a unit. The depth of the water in the pool at the end of the slide is between three and four feet. At this point the bottom of the pool is clearly visible. There are also conspicuous numbers painted on the sides of the pool indicating the depth of the water at various points.

The photograph clearly shows that the slide does not slope toward a horizontal position. It is placed almost upright; its position in the water is more nearly vertical or perpendicular. It is a fair assumption to say that the greater part of the slide stands in the water at an angle of about 150 degrees and possibly more. This sharp incline, however, is slightly diminished toward the end of the slide where it curves up or "flattens out" a little.

On Saturday, August 8, 1936, Daniel, together with his companion, one Bernard Thaw, had been playing in the pool since eleven o'clock in the morning. Bernard, about seventeen years of age, was learning to swim. Daniel, sixteen years of age, was a good swimmer. He was of the athletic type; he was five and

one-half feet tall and weighed 130 pounds. He was a student at one of the public high schools. At about two o'clock they decided to try the slide. Bernard went down the slide on his stomach, head first, hands forward. After he landed in the water he stood up; the water was up to his waist, about three feet high. Daniel then followed him, going down the slide in the same manner. Bernard saw Daniel's head strike the bottom of the pool and his unconscious body rise to the surface. Bernard had gone down the slide before in the same manner; and on that day there were other patrons using it the same way. But he never had seen Daniel go down the slide before.

On the platform near the slide there was a sign reading: "Danger Do Not Dive. Slide at your own Risk." Except possibly for this sign, no warning or notice was given to Daniel or Bernard against sliding down head first or as to the manner in which the slide should or should not be used. Bernard testified there was no guard or attendant at or near the slide; no one was present to direct, control or supervise the use of the slide. There was a guard some distance away, in the northwest corner of the pool, at a life-saving post which is behind the slide. But the view of a guard so stationed is necessarily obscured by the structure of the slide, platform and stairway. He, therefore, was in no position to observe the manner in which the patrons were using the slide.

Defendant offered no proof; it rested at the end of plaintiff's case. Plaintiff claims that his boy Daniel was injured and died because of defendant's negligence in failing to have present at the slide an attendant who would exercise proper supervision over its use and would prevent patrons from going down head first into three feet of water or at least cautioning them against the danger of such a practice. Defendant contends that the complaint should be dismissed because, as matter of law, it must be held that defendant was under no duty to have an attendant present to supervise the use of the slide or to warn the patrons and that under all the circumstances, particularly with the shallow depth of the water and the bottom of the pool plainly visible, the deceased by going down head first was guilty of contributory negligence and voluntarily subjected himself to the risk of the injury which he received and from which he died.

First, the question of contributory negligence and assumption of risk will be discussed. Ordinarily, perhaps, it might be deemed unnecessary through an attendant or otherwise to warn a mature adult patron of the grave danger of going down head first into three feet of water; and if such a patron did and was injured he may perhaps be charged with contributory negligence as matter of law.

But here we are not concerned with adults and we need not decide the standard of care applicable to them. We are dealing with a healthy, active and athletic boy seventeen years of age who may be presumed to possess all the natural proclivities usually manifested by such boys. " In deciding what would be reasonable care under the circumstances, the jury were entitled to take into consideration the well-known propensities of children to climb about and play." (RIPPEY, J., *Collentine* v. *City of New York*, 279 N. Y. 119, 125.) No one can expect a boy, such as the one described above, to be as circumspect or as intelligent in appraising hazards as a matured adult. Such a boy is inclined to be not only playful, but also venturesome and daring, especially if he thinks he is a good swimmer. It is common knowledge that such young boys constitute a substantial number of the patrons of any pool that has the attraction of a slide or other amusement devices; and that the operators of swimming pools cater to that type of boy.

There is no proof in the record to show that the deceased had ever before gone down the slide head first; it may have been his first attempt. Having observed his companion and other patrons come down head first safely, he followed. Undoubtedly, coming down head first there was an inherent danger of the head coming into contact with the hard surface of the bottom of the pool. But, as matter of law, it cannot be said that that danger was plain or obvious, at least not to any boy of the deceased's age and propensities. There being no prohibition or warning against such usage and others before him having resorted to it without hurt, he had a right to believe that the depth of the water, even though only apparently three feet, was sufficient to deflect his head away from the bottom of the pool. By its inaction defendant was, in large measure, responsible for that belief. Defendant did nothing whatever to dispel it and, indeed, it may be said that defendant held out or acquiesced in such use of the slide as an added attraction.

In any event, no operator of an amusement device should be permitted to shield himself behind the ignorance of spirited youths, particularly ignorance to which he contributed and from which he derived a pecuniary advantage. As pointed out above, to the boys the danger of striking the head on the bottom of the pool if they descended head first was neither an obvious nor a necessary risk inherent in the sport. To them the danger was obscure and unobserved.

It follows, therefore, that upon all the facts in this case the question of the deceased's contributory negligence presented an issue for the jury. That issue the court squarely submitted to them and upon this record the court cannot say, as matter of law,

that they were not justified in concluding that to the deceased boy the risk of striking his head upon the bottom of the pool was neither an obvious nor a necessary incident of the sport in which he indulged. If to the patron the risk is not an obvious or necessary one then he cannot be charged with contributory negligence or with having voluntarily subjected himself to the unseen danger. (*Murphy* v. *Steeplechase Amusement Co., Inc.,* 250 N. Y. 479.)

The next question is whether defendant was guilty of any negligence. It appears that that question too, on the facts in this case, cannot be decided as a matter of law. From what has been said it is clear that, while to the young boys the danger was obscure and unobserved, to the defendant as the operator of the device the danger was or should have been foreseen. It was aware of the steep incline of the slide and of the fact that it was almost perpendicular. It knew that the depth of the water at the bottom of the slide was only about three feet. It knew or should have known that water of this depth is not always sufficient to halt the rapid descent. It knew or should have known that dropping suddenly head first into three feet of water, with the accelerated momentum gained from the rapid descent down an almost vertical incline of twenty-eight feet in length, it may at times be difficult, if not impossible, to keep the hands outstretched or to maintain the body rigid or to direct the position of the head so as to avoid contact with the hard bottom of the pool. It knew or should have known that upon a slide so steep and so long the descent may be so swift and so powerful that the patron is apt to lose control of his body the moment it strikes the water; and that the water is so shallow that before he can regain control of his body his head is likely to come into contact with the bottom of the pool. It knew or should have known that the combination of the physical facts constituted a danger not obvious to young boys attempting to descend the slide head first.

In other words, defendant should have foreseen the danger and should have taken the necessary precautions to guard against it either by posting an attendant to prevent head first descent upon the slide or having the attendant warn the patrons against the danger of such a descent. But instead of taking adequate precautions to guard against the danger of striking the bottom of the pool, a danger latent to the patron but obvious to the operator, defendant here relied almost entirely on the sign which told the patrons that it is dangerous to dive from the platform and that they used the slide at their own risk. Assuming that the court or jury should determine that by means of this sign defendant intended or undertook to notify its patrons that it is dangerous

to slide down head first, then, to borrow the words of Judge RIPPEY in the *Collentine* case, " whether such notice was adequate under all the circumstances and whether defendant had performed its duty of ordinary care would still be questions of fact which the court was unauthorized to settle as matter of law."

In the opinion of the court the sign posted by defendant was not only inadequate; it was misleading. It served to give notice merely that there are no special dangers to be heeded; it lulled the patrons into a false sense of security. Here the boy did not attempt to dive from the platform; he slid down head first as many others had before him. With or without the sign he knew that by going down the slide he was accepting all the risks that are open and obvious, such as the risk of striking the water flat and receiving a burn or cut, or the risk of bruising the body. But the risk of having the head strike the hard bottom of the pool with such force as to fracture the skull he did not accept or even contemplate.

That the operator of every establishment which is open to the public has the affirmative duty of exercising due care and caution to protect his patrons from injury is well settled. " Generally, whenever the one in possession or control of property, for his gain or profit, invites or permits the public without discrimination to disport themselves upon it, the duty of exercising care requires him ' to provide an adequate degree of general supervision.' (*Curcio* v. *City of New York*, 275 N. Y. 20.) And if he maintains upon his property any special structure or device which may cause injury unless properly used, it is for the jury to determine whether under all the circumstances in the exercise of reasonable care he ' should have furnished an attendant to supervise the use ' of that structure or device." (*Schubart* v. *Hotel Astor, Inc.*, 168 Misc. 431, 435; affd., 255 App. Div. 1012 [Second Dept.]; affd., 281 N. Y. 597.)

With respect to the amusement device of a slide the Appellate Division of this Department on two occasions has specifically held that it is a structure which may cause injury unless properly used and that it is for the jury to determine whether, under all the circumstances, the defendant should have furnished a guard or attendant to supervise the use of such an amusement device. (*Rega* v. *Luna Amusement Co.*, 243 App. Div. 725; *Maggio* v. *Board of Education*, 219 id. 802.) With respect to the amusement device of a revolving barrel the Appellate Division of this Department has reached the same conclusion. (*Schweit* v. *Harum Scarum Amusement Corp.*, 247 App. Div. 755.) In those cases the slides and the barrel were on *terra firma*. Quite obviously the latent

dangers which inhere in a device placed in water, as the one in the instant case, are far more serious and numerous.

The proof presented a sharp issue of fact for the jury as to whether, under all the circumstances, it was incumbent upon defendant to have an attendant stationed at the slide or to have taken some other equally efficient means to prevent boys from going down the slide head first or of warning them of the danger to be apprehended from the use of the slide in that manner. With respect to that issue, as well as with respect to the issue of contributory negligence, conflicting inferences may well be drawn. Hence, it would be error to substitute the judgment of the court for that of the jury and to dismiss the complaint as matter of law. (*Schubart* v. *Hotel Astor, Inc., supra,* 438.)

Defendant raises another point. It contends that it was reversible error for the court to have permitted an expert called by plaintiff to testify that an attendant should have been present at the slide in question to restrain the participants. While there is such testimony a fair reading of the record will disclose that it was developed by defendant itself in its cross-examination of the expert. It cannot complain of testimony which its own examination has evoked. On the direct examination of the expert by plaintiff the court was careful to limit the answer of the expert solely to what the general custom and practice was at other pools with respect to having a guard or attendant present to supervise the use of the slide. The record shows that on the direct examination the court, on several occasions, sustained defendant's objection to a question which sought to elicit whether in the opinion of the expert an attendant should have been present at the slide in the case at bar. That, of course, is the issue which the jury must decide; and that was one of the principal issues which the court in its charge squarely submitted to the jury; it permeates the entire charge; and the jury by its verdict determined that issue adversely to defendant. The decision of that question was never taken from the jury.

It is well established that when a question of negligence is involved, then, for the purpose of showing the exercise or the failure to exercise ordinary care, evidence of general custom and usage by others engaged in the same trade or business as the defendant, is competent. (*Shannahan* v. *Empire Engineering Corp.,* 204 N. Y. 543; *Levine* v. *Blaine Co.,* 273 id. 386.) Defendant urges, however, that such evidence of custom and usage is admissible only " in order to establish a standard of construction and equipment," citing the above cases. There is no fact or statement in either of these cases which indicates any such limitation. Evidence of

custom and usage of a business, if available, is admissible to establish, not only a standard of construction and equipment, but also a standard of conduct in the proper use of the equipment. As stated in the *Shannahan* case: " * * * The common usage of the business is a test of negligence but not a conclusive or controlling test. * * * While it is not always true that what everybody does anybody may do without the imputation of negligence, still it is competent to show the general habit of mankind in the same kind of business as tending to establish a standard by which ordinary care may be judged. We have said that ' ordinarily what everybody does is all that anybody need do.' * * * Such evidence is received for what it is worth in view of all the circumstances of the particular case, and, under proper instruction from the court as to its inconclusive nature, the jury has a right to give it such consideration as they think it should receive in connection with all the other facts."

Of course, regardless of the prevailing custom and usage by others, the ultimate issue of fact as to whether under all the circumstances a defendant was negligent in acting or failing to act as charged by the plaintiff, is for the jury to determine. In the instant case the issue of whether or not defendant was negligent in failing to have an attendant present to supervise the use of the slide and to prevent the boys from going down head first, was squarely submitted to the jury and determined by them.

All of the defendant's motions, on which the court had reserved decision, are now denied.

Execution stayed thirty days; defendant to have sixty days in which to make and serve case on appeal.