McBRIDE's THEATRE TICKET OFFICES, INC., Plaintiff, v. PAUL Moss, as Commissioner of Licenses of the City of New York, Defendant.

Supreme Court, Special Term, New York County, August 1, 1944.

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein* of counsel), for defendant.

*Phillip L. Miller* for plaintiff.

*Julien Jawitz* for Independent Theatre Ticket Brokers Association, *amicus curiae.*

*George P. Halperin* and *Robert Rockmore* for Piccadilly Ticket Service, Inc., *amicus curiae.*

BOTEIN, J. This is a motion brought before answer by the defendant, the Commissioner of Licenses of the City of New York, under rule 106 of the Rules of Civil Practice, to dismiss the complaint on the ground that it fails to state facts sufficient to constitute a cause of action.

The complaint alleges that the plaintiff is in the business of reselling theatre tickets in the city of New York and that it has been licensed by the defendant to conduct that business for the year 1944; that for many years the plaintiff charged its patrons the actual postage cost for tickets delivered by mail and has made a fixed charge of fifty cents for each delivery by its employee messenger to any place in the borough of Manhattan of the city of New York; that such deliveries are made only at

the request of customers; that there are four tickets to the average delivery, and that no delivery charge is made when a ticket is purchased and delivered over the counter at plaintiff's place of business.

The complaint further alleges that the defendant has interpreted section 169-c of the General Business Law (hereinafter quoted), as prohibiting the plaintiff from making any charge whatsoever for delivery of such tickets by mail or messenger; that he gave a "final warning" that plaintiff must not charge for such delivery and that he has advised the plaintiff that if any charge for delivery were made, such charge would be treated as a violation of the provisions of article X-B of the General Business Law, relating to theatre tickets, and that he would suspend or revoke the plaintiff's license.

Finally, the complaint alleges that the plaintiff seeks a judicial determination of its right to make the afore-described delivery charges, and of the right of the defendant to suspend or revoke plaintiff's license for making such charges. The prayer for relief in substance demands a declaration to the effect that the making of the aforementioned delivery charges do not constitute a violation of the aforementioned section 169-c.

Section 169-c, which is part of article X-B of the General Business Law, reads as follows:

"§ 169-c. *Printing price on ticket.* Every person, firm or corporation who owns, operates or controls a theatre, place of amusement or entertainment, or other place where public exhibitions, games, contests or performances are held shall, if a price be charged for admission thereto, print on the face of each such ticket or other evidence of the right of entry the price charged therefor by such person, firm or corporation. Such person, firm or corporation shall likewise be required to print or endorse thereon the maximum premium (not to exceed seventy-five cents, plus lawful taxes), at which such ticket or other evidence of the right of entry may be resold or offered for resale. *It shall be unlawful for any person, firm or corporation to resell or offer to resell such ticket or other evidence of the right of entry at any premium or price in excess of such maximum premium printed or endorsed thereon, plus lawful taxes, or so that the ultimate price to the purchaser of such ticket shall exceed a sum in excess of seventy-five cents over and above the original price charged for admission as printed on the face of each such ticket or other evidence of the right of entry, plus lawful taxes.*" (Emphasis supplied.)

Section 167 states that the charge for admission to theatres and other places of amusement or entertainment is a matter affected with a public interest and subject to supervision for the purpose of safeguarding the public against fraud, extortion, exorbitant rates and similar abuses. Elsewhere in article X-B the defendant Commissioner is empowered to license ticket brokers (§ 168), to suspend or revoke licenses for violations of the provisions of the article (§ 169-a) and, in enforcing the article, to "promulgate such rules and regulations as may be deemed necessary for the protection of the public" (§ 169-b).

I shall first discuss the defendant's contention that the complaint should be dismissed because it shows on its face that these delivery and mailing charges constitute a violation of section 169-c and of the public policy of the State as declared in section 167.

On a motion to dismiss the complaint under rule 106, the allegations of the complaint are to be taken as true (*Dun & Bradstreet, Inc.*, v. *City of New York*, 276 N. Y. 198, 201), and the only question to be determined is one of law, namely, "whether the pleading is sufficient to withstand challenge by demurrer or by its statutory modern substitute, motion to dismiss" (*Rockland Light and Power Co.* v. *City of New York*, 289 N. Y. 45, 51).

The sufficiency of the complaint, as I see it, rests as a matter of statute interpretation upon a determination of whether the "ultimate price" of the tickets within the meaning of section 169-c may be inclusive of, or must be exclusive of, any or all delivery service charges.

The plaintiff contends that the words "ultimate price," read in their context, mean the sum total of the stated admission price plus the seventy-five cents resale premium, and that those words do not purport to include as part thereof additional charges for services which plaintiff was under no statutory obligation to render. The plaintiff argues that the provisions of article X-B indicate that resales of theatre tickets are regarded as over-the-counter purchases at the offices of the licensees, in similar fashion to "box-office" sales at theatres; that the choice of requiring delivery is with the buyer; and that the flat charge of fifty cents for each delivery is not an unreasonable one for such a special and additional service.

The defendant asserts that the evident intent of the Legislature was immutably to limit the over-all cost to patrons of the plaintiff to the stated admission price plus the seventy-five cent premium, so as to armor the transaction against any fraudulent or extortionate charges which would, by indirection, increase the legal price ceiling or maximum premium.

By electing to move under rule 106, thus conceding the truth of the allegations set forth in the complaint for the purposes of this motion, the defendant is forced into a narrow position wherein he must assert that any delivery charge made by a ticket broker, no matter how bona fide, and whether or not it calls for special services which the broker is under no statutory obligation to perform, is illegal if it causes the total cost of the ticket and services to exceed the original admission price plus seventy-five cents. To this narrow position the defendant may not now rally the reinforcements which might be available to him under a motion made after joinder of issue or upon the trial of this action. In the face of the undisputed allegations of the complaint, he may not now urge that the delivery charges, made in the manner and under the circumstances alleged, are devices fraudulently designed to circumvent the purposes of the statute. For example, it may be that the overwhelming majority of the deliveries are made to nearby box offices, or that for other reasons the fifty-cent charge is not as reasonable as asserted by the plaintiff. Such findings, however, may not be distilled from the complaint.

The interpretation allegedly placed upon section 169-c by the defendant may well be justified by many factors and circumstances which can properly be brought before the court by joinder of issue or upon the trial. However, in the absence of any legislative inquiry or findings embracing the subject of delivery charges, and since the yardstick by which I am asked to measure their legality, because of pleading strictures, cannot be applied to all dimensions of the practice which the defendant has proscribed, I must perforce hold that the delivery charges, made as alleged in the complaint, are not necessarily in violation of section 169-c of the General Business Law. Upon the present motion, with only the bare words of the statute before me, the statute " should be read in a natural way so as to get at the exact meaning without forcing it in any direction in order to meet the needs of either side in a particular case " (*Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543, 548).

Defendant also urges that, in the exercise of sound judicial discretion, a declaratory judgment should not issue. He relies upon the provisions of rule 212, which read as follows: " *Jurisdiction discretionary.* If, in the opinion of the court, the parties should be left to relief by existing forms of actions, or for other reasons, it may decline to pronounce a declaratory judgment, stating the ground on which its discretion is so exercised."

There is no relief presently available to the plaintiff, at law or

in equity, by existing forms of action, unless the plaintiff violates the "final warning" of the defendant. The plaintiff alleges that it has been prevented from making the delivery charges after the defendant issued his warning, and argues that it is now suffering irreparable injuries. To otherwise obtain an adjudication of the issues which it raises by this action the plaintiff will be compelled to resume making delivery charges and thereby risk court suspension or revocation of its license or even criminal prosecution under the provisions of article X-B. It would be confronted with a Scylla and Charybdis choice of absorbing the delivery charges or braving severe penalties if the defendant's interpretation of the statute were to be upheld.

Or, as expressed by Professor Borchard on Declaratory Judgments (2d ed.), the court "informs the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool is to eat it."

Lord Justice FARWELL's remark in *Dyson* v. *Attorney-General* ([1911] 1 K. B. 410, 421) is particularly apt: " * * * it would be a blot on our system of law and procedure if there is no way by which a decision on the true limit of the power of inquisition vested in the Commissioners can be obtained by any member of the public aggrieved, without putting himself in the invidious position of being sued for a penalty."

At this stage of the action, with the allegations of the complaint undenied, and at least an arguable position established by the plaintiff, it would be an abuse of discretion to foreclose it from the relief it seeks by this comparatively sheltered form of action and to relegate it to some other course which would permit of a definition of its rights only through exposure to the hazards of criminal prosecution and the risk of loss of its very right to conduct business.

As for various other considerations urged by the defendant as grounds for the exercise by the court of its discretion to "decline to pronounce a declaratory judgment" under rule 212, they do not appear on the face of the complaint.

In *Neubeck* v. *McDonald* (128 Misc. 768) the court, in denying a motion to dismiss a complaint for a declaratory judgment on the ground that it failed to state facts sufficient to constitute a cause of action, stated: " The final exercise of the court's discretion either to declare the rights and legal relations of the parties or to decline to pronounce a declaratory judgment, as provided in rule 212 of the Rules of Civil Practice, cannot be anticipated by a court at Special Term nor by the trial court, in advance, and not until such time during the trial as the court can properly make such final determination."

In *Rockland Light and Power Co.* v. *City of New York* (289 N. Y. 45, 50, *supra*) the Court of Appeals held that, regardless of the merits of the controversy or the scope of the plaintiff's rights, a complaint for a declaratory judgment should not be dismissed as '' matter of law '' where the facts alleged show the existence of a controversy concerning '' rights and legal relations '' and where it appears that the discretionary and extraordinary powers of the court have been invoked for a sufficient reason.

In the same case (p. 51) the Court of Appeals also approved the wisdom of the practice that a complaint praying for judgment declaring the '' rights and legal relations '' of the parties should not be dismissed as insufficient '' merely because the facts alleged in the complaint show that the plaintiff is not entitled to a declaration of rights *as the plaintiff claims them to be* '' (italics by the Court of Appeals). '' The court should, in proper case, retain jurisdiction of the action and should exercise its power to declare the rights and legal relations of the parties whatever they may be.''

I conclude that the complaint as a pleading is sufficient in law. The motion to dismiss is therefore denied.