CARMEN GONZALEZ, as Administratrix of the Estate of ROBERTO GONZALEZ, Deceased, Appellant, *v.* CONCOURSE PLAZA SYNDICATES, INC., et al., Respondents.

First Department, March 13, 1969.

*Arthur L. Kagan* of counsel (*Norman J. Mordkofsky,* attorney), for appellant.

*Irwin M. Strum* of counsel (*Bernard Helfenstein,* attorney), for Concourse Plaza Syndicates, Inc., respondent.

*William F. McNulty* of counsel (*Smith & Formidoni,* attorneys), for Mildred Weinberg and another, respondents.

CAPOZZOLI, J. In this action plaintiff seeks to recover for the wrongful death of her intestate, who was killed by a fall while presumably engaged in cleaning a window in the living room of Apartment 910 of the hotel owned by the defendant, Concourse Plaza Syndicates, Inc. The individual defendants are the lessees of said Apartment 910, which was located on the ninth floor. The apartment consisted of a living room, which was also used as a bed room, and kitchen.

The case was tried only on the issue of liability. The trial court dismissed the amended complaint at the close of plaintiff's case, apparently on the theory that there was no showing that the alleged negligence of the defendants was the proximate cause of the accident.

The primary question presented on this appeal is whether or not plaintiff made out a prima facie case. A review of the record discloses that, at about 10:00 A.M. on October 3, 1961, the decedent, a window washer, who was employed by the Flatiron Window Cleaning Company, was admitted into said apartment by the defendant, Mildred Weinberg, for the purpose of cleaning the windows. Mrs. Weinberg noticed that he was wearing work clothes and was carrying a pail of water and a sponge. She led him to the living room and he placed his pail on the radiator cover in front of the open window, which he was to wash. At this point Mrs. Weinberg left the living room and joined her mother in the kitchen. The evidence disclosed that the decedent never left the living room.

Within moments after Mrs. Weinberg joined her mother she heard a slight noise. She arose and went into the living room and did not see the decedent anywhere in the room. The pail was still on the radiator cover, in front of the open window. Mrs. Weinberg then went into her kitchen " and opened the window. We looked out the window and we saw him there ", on the parapet, seven floors below. When the police reached the body the decedent was wearing a window washer's safety belt.

The living room window, involved in this case, consisted of a double-hung or counterbalanced window, with an upper and lower portion containing glass panels. The lower portion of the window was 55¾ inches wide and 36 inches high. Anchors, which are used when the window is washed from the outside, were attached to the exterior frame. They were intact and operative before and after the accident. Resting on the inner and outer sill of the window was an air conditioner 27 inches wide, 16¼ inches high and 18 inches deep. It " was approximately in the center of the window frame. There were two side

panels, one on each side, which was 14-½ inches wide. In fact, each one was 14-½ inches wide ''. It must be noted that the window was not sealed and it could be opened and closed. When the bottom portion of the window was fully raised it was ''13-¼ inches high from the top of the air conditioner ''.

This air conditioner was installed at about the end of 1958 or the beginning of 1959 when the Weinbergs moved into the apartment. They purchased the air conditioner and the hotel installed it. The rent paid was $200 per month and, according to the testimony of Mrs. Weinberg in her examination before trial:

'' It includes cleaning, all cleaning and repair. I have nothing to do with it.

'' Q. Was the Concourse Plaza Syndicates required to clean the windows?

'' A. Yes.''

It is clear that the defendant, Concourse Plaza, had an agreement with Flatiron Window Cleaning Company to clean all the windows of the hotel and it is, therefore, reasonable to conclude that the decedent was in the Weinberg apartment pursuant to such agreement.

The Legislature, in its wisdom, has enacted section 202 of the Labor Law for the protection of persons engaged at window cleaning, where the windows are cleaned from the outside. Under this section the Board of Standards and Appeals has been given the authority to make rules to effectuate the purposes of the section. Pursuant to such authority, the Board of Standards and Appeals has enacted rule 21.6 of the Industrial Code (12 NYCRR 21.6 [a], [2]) which is of particular relevance to this case and reads in part as follows:

'' (2) A safe window is one which complies with all of the following requirements:

\* \* \*

'' (iii) If it is double-hung or counterbalanced it shall afford an unobstructed passage space to the exterior sill not less than 21 inches wide and 30 inches high from the sill.

'' (iv) It shall afford a safe way of approach from an interior floor level to the passage space.

'' (v) It shall have an unobstructed sill or ledge providing a footing at least four inches wide for the full width of the window frame.''

While it is true that the record is silent as to just where the anchors were placed, the obstruction on this window might well have interfered with the effort of the decedent to hook his belt

to these anchors, assuming that the anchors were properly placed. As was said by the court in *Durham* v. *Metropolitan Elec. Protective Assn.* (18 N Y 2d 433, 436):

"It seems clear that there is a close relationship between requirements regulating window openings and the heights of anchors. All are obviously intended to maximize safety and minimize risks in an inherently perilous undertaking. If window openings do not meet requirements, anchor heights will be equally off in terms of what is required for safe operations."

The rules of the Board of Standards and Appeals, hereinabove quoted, must apply unless, on no reasonable view, are the windows likely to be cleaned from the outside. This window was clearly of a type that it was "likely to be cleaned from the outside". (*Homin* v. *Cleveland & Whitehill Corp.*, 256 App. Div. 187, 190, revd. on other grounds 281 N. Y. 484.) In addition, the record contains the statement of the individual defendant, Mrs. Weinberg, allegedly made to the witness, Julius Swire, that, in the past, the windows of the apartment had been cleaned on the outside.

In view of the fact that the complaint was dismissed at the end of the plaintiff's case, we must construe the evidence adduced in the light most favorable to plaintiff and accord it every inference which can be reasonably drawn therefrom. (*Witkowicz* v. *Amalgamated Props.*, 264 App. Div. 156.)

Since this is a death action plaintiff is not held to as high a degree of proof as where an injured plaintiff can himself describe the occurrence. (*Noseworthy* v. *City of New York,* 298 N. Y. 76; *Swensson* v. *New York, Albany Desp. Co.,* 309 N. Y. 497; *Eder* v. *Cashin,* 281 App. Div. 456.) Further, if there was any contributory negligence, it is a defense to be pleaded and proven by the defendants.

In addition to the evidence showing a violation of the rules of the Board of Standards and Appeals, there was evidence introduced by several expert witnesses, called by the plaintiff, who testified that there was a standard and established practice in the window cleaning industry with regard to passage space in windows to be cleaned from the outside and that this standard and practice was violated in the case at bar. Since this is a negligence case, this evidence was properly received. (*Shannahan* v. *Empire Eng. Corp.,* 204 N. Y. 543; *Levy* v. *Cascades Operating Corp.,* 176 Misc. 373, revd. on other grounds 263 App. Div. 882, revd. 289 N. Y. 714; *Pike* v. *Sillins,* 31 A D 2d 805.)

In *Levy* v. *Cascades Operating Corp.* (*supra,* p. 379) of the court's opinion, there is the following: "It is well established that when a question of negligence is involved, then, for the pur-

pose of showing the exercise or the failure to exercise ordinary care, evidence of general custom and usage by others engaged in the same trade or business as the defendant, is competent.''

Again, in *Shannahan* v. *Empire Eng. Corp.* (*supra*, p. 550) the court said: '' Such evidence is received for what it is worth in view of all the circumstances of the particular case, and, under proper instruction from the court as to its inconclusive nature, the jury has a right to give it such consideration as they think it should receive in connection with all the other facts.''

Amongst other things, the contention is advanced, on behalf of the defendants, that there was no showing that the body found on the parapet was the same person who was admitted to the apartment a couple of minutes before. This argument, to say the least, was fatuous and specious. Under the circumstances disclosed in the record, there can be no doubt that the body found was that of the window cleaner who had been in the Weinberg apartment.

A reading of the record is convincing that there was sufficient evidence as to the question of the defendants' negligence to warrant the submission of the case to a jury and the complaint should not have been dismissed. '' Proof of defendants' liability may be established by circumstantial as well as by direct evidence. [Citing cases.] Where, as here, reasonable minds might differ concerning the legitimate inferences to be deduced from the circumstances shown, it is for the jury to draw such inferences.'' (*Witkowicz* v. *Amalgamated Props.*, 264 App. Div. 156, 160, *supra*.)

In view of the fact that there is to be a new trial, it is desirable to take note of the ruling of the court below which struck out the testimony of the witness, Jackman, to the effect that the body, when found, was '' underneath the living room window ''. It is clear that the plaintiff had the right to show that the body was in a direct line with the living room window. It was relevant to the issues presented, especially in a case based in large part on circumstantial evidence and it was error for the court to have stricken these answers.

For the reasons above stated, the judgment below should be reversed, on the law, and a new trial ordered, with costs to abide the event.

STEVENS, P. J., McGIVERN, MARKEWICH and MACKEN, JJ., concur.

Judgment unanimously reversed, on the law, and a new trial ordered, with costs to abide the event.